The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on July 1, 2021, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: July 1, 2021



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| JOHN W. STRUHAR, SR., | ) | Case No. 20-11957 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| HERBERT WEBB, | ) | |
|     Plaintiff. | ) | Adversary Proceeding |
| | ) | No. 20-1057 |
| v. | ) | |
| | ) | |
| JOHN W. STRUHAR, SR., | ) | |
|     Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

In this adversary proceeding, the plaintiff-creditor Herbert Webb ("the creditor") seeks a determination that the defendant-debtor John W. Struhar, Sr. ("the debtor") is personally liable for a nondischargeable debt of about $4,300 in

---

[1] This Opinion is not intended for official publication.

unpaid auction proceeds following an online auction conducted by the debtor's

wholly-owned corporation, Bottomline Auctions Inc. ("Bottomline Auctions").

Both parties have moved for summary judgment.  The creditor contends that the

record establishes as a matter of law that the debtor is personally liable for the

unpaid auction proceeds and that such debt is nondischargeable under 11 U.S.C.

§ 523(a)(2)(A) and (a)(4).  On the other hand, the debtor contends that the record

establishes as a matter of law that he is not personally liable for any debts of

Bottomline Auctions.  For the reasons that follow, both motions for summary

judgment are denied.

## JURISDICTION

This Court has jurisdiction over this action.  Determinations of

dischargeability under 11 U.S.C. § 523 are core proceedings under 28 U.S.C.

§ 157(b)(2)(I) and Local General Order No. 2012-7, entered by the United States

District Court for the Northern District of Ohio.  In addition, both parties have

expressly consented to the bankruptcy court entering final judgment (*see*

Docket Nos. 9 & 12).  *See also* 28 U.S.C. § 157(c) and (e); *Wellness Intern.*

*Network, Ltd. v. Sharif*, 575 U.S. 665, 686 (2015) ("Article III permits bankruptcy

courts to decide *Stern* claims submitted to them by consent.").

2

BACKGROUND

Unless otherwise indicated, the facts described below are not in dispute. The debtor was the sole equity owner of Bottomline Auctions, which operated as an auction mediation company from 2009 until January 2020 (Docket No. 20). An auction mediation company is "a company that provides a forum through the internet for a person to sell the person's real or personal property via the submission of silent bids using a computer or other electronic device." Ohio Rev. Code Ann. § 4707.01(G).

The creditor was the sole owner of We're Rolling Pretzels (Docket No. 16). The creditor had previously worked with Bottomline Auctions to sell business equipment of We're Rolling Pretzels (Docket No. 21, Exh. F). On November 14, 2019, the creditor contacted Mr. Struhar to inquire whether Bottomline Auctions would be interested in selling more business equipment of We're Rolling Pretzels ("the equipment") at auction (*Id.*). Mr. Struhar responded that Bottomline Auctions "would be very happy to work with [the creditor] again," and the parties reached an agreement regarding a timeline for the sale of the equipment (*Id.*). On or about January 6, 2020, the creditor and Bottomline Auctions entered into a written agreement for Bottomline Auctions to sell the equipment (Docket Nos. 20 & 21). Mr. Struhar's son took pictures of the equipment for use

3

in the online auction (*Id.*). The creditor claims that he was never provided a copy of the written agreement (Docket No. 21).

According to the creditor, the online auction for the equipment ran from January 9, 2020, through January 19, 2020, and the successful bidders picked up the equipment on January 21, 2020 (*Id.*). According to the agreement, the creditor's share of the auction proceeds was to be remitted within four weeks of the pickup date (Docket No. 16 at ¶ 16). The creditor never received his share of the auction proceeds (*Id.* at ¶ 17). Following the auction, the creditor contacted the debtor several times via email and text message to inquire about the auction proceeds (Docket No. 21, Exhs. E & F). The debtor first replied that "it should be soon," and then told the creditor that the debtor "should be able to get a check out to [the creditor] in a couple of days" (*Id.*). In later text messages, the debtor told the creditor that Bottomline Auctions was "working to sell any assets the company has left to be able to settle what [the creditor] owed" and that it had been a challenge to make sales during the ongoing pandemic (*Id.* at Exh. F). The debtor told the creditor that he "[did not] know how long this shut down will last or when [the debtor] would be able to settle up," and finally informed the creditor that the debtor had been unable to do any business at all and had filed for bankruptcy (*Id.*).

4

On April 13, 2020, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code (Case No. 20-11957, Docket No. 1). On Schedule E, the debtor listed an unsecured debt held by Herbert Webb in the amount of $4,000. The debtor checked the box to indicate that the debt was incurred by "debtor 1 only," and listed the debt as a nonpriority unsecured claim "business charge-off[]." The debtor did not check the boxes to indicate that the claim was contingent, unliquidated, or disputed.

On June 24, 2020, the creditor filed this adversary proceeding against the debtor. In his second amended complaint, the creditor asserts that the debtor is liable for $4,344.70 in unpaid auction proceeds and that this debt should be nondischargeable under 11 U.S.C § 523(a)(2)(A), (a)(4), and (a)(6) (Docket No. 16).

On March 31, 2021, the debtor filed a motion for summary judgment (Docket No. 20). In the motion, the debtor argues that the debt owed to the creditor was incurred by Bottomline Auctions, and that the creditor has not made out the elements needed to pierce the corporate veil and hold the debtor personally responsible for the corporate debt. On May 5, 2021, the creditor filed a response, claiming that there is a genuine dispute of material fact as to whether piercing the corporate veil is warranted (Docket No. 29). According to the creditor's response,

5

piercing the corporate veil is justified for several reasons: the debtor was the president, sole officer, and sole shareholder of Bottomline Auctions; Bottomline Auctions had no stock certificates; the debtor governed all or substantially all of the affairs of Bottomline Auctions; the debtor oversaw all operations of Bottomline Auctions; the debtor entered into and personally performed all contracts of Bottomline Auctions; and the debtor acted as the corporate agent of Bottomline Auctions.

On March 31, 2021, the creditor also filed a motion for summary judgment (Docket No. 21). In his motion, the creditor argues that the debt is nondischargeable under § 523(a)(2)(A) because the debtor obtained the auction proceeds by a false representation, and because the debtor was presumed to be insolvent during the 90 day "look-back" period in 11 U.S.C. 547(f). The creditor also argues that the debt is nondischargeable under § 523(a)(4) because the debtor committed larceny and/or embezzlement in failing to turn over the auction proceeds. The debtor did not respond to the creditor's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that a court

6

"shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 was amended in 2010; however, "[t]he commentary to Rule 56 cautions that the 2010 amendments were not intended to effect a substantive change in the summary-judgment standard." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A court reviewing a motion for summary judgment cannot weigh the evidence or make credibility determinations." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569 (6th Cir. 2012) (citation omitted). "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party." *Id.* at 570.

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Taft Broadcasting Co. v. United States,* 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.; accord McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting same language from *Taft Broadcasting*).

7

## DISCUSSION

The Court will first address the debtor's motion for summary judgment on the issue of piercing the corporate veil, and will then address the creditor's motion for summary judgment on the issue of dischargeability under § 523(a)(2)(A) and (a)(4).

## PIERCING THE CORPORATE VEIL

In his motion for summary judgment, the debtor argues that the creditor has not shown that piercing the corporate veil is warranted, and that the debtor cannot be held liable for the debt of Bottomline Auctions. The standard under Ohio law for piercing the corporate veil is laid out in *Belvedere Condominium Unit Owners Association v. R.E. Roark Companies, Inc.*:

> A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation. See Presser, Piercing the Corporate Veil (1991) 1–4. An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes. "That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded." *State ex rel. Atty. Gen. v. Standard Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus. Under this exception, the "veil" of the corporation can be "pierced" and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity. Courts will permit

8

individual shareholder liability only if the shareholder is indistinguishable from or the "alter ego" of the corporation itself. See, generally, Presser, *supra*.

. . .

Thus, the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 1993-Ohio-119,

67 Ohio St. 3d 274, 287-289 617 N.E.2d 1075, 1085-1086, *holding modified*

*by Dombroski v. WellPoint, Inc.*, 2008-Ohio-4827, 119 Ohio St. 3d 506,

895 N.E.2d 538.

According to the debtor, all of the allegations by the creditor relate to the debtor's actions on behalf of Bottomline Auctions, not actions by the debtor in his personal capacity. The debtor claims that other than alleging that the debtor was the sole owner and shareholder of Bottomline Auctions, the creditor has provided no evidence that the debtor should be held personally liable for the debt of Bottomline Auctions. The debtor argues that being the sole owner and shareholder is not sufficient to hold him liable for the debt of Bottomline Auctions.

9

In his objection to the debtor's motion for summary judgment, the creditor argues that piercing the corporate veil is justified for several reasons: the debtor is the president, sole officer, and sole shareholder of Bottomline Auctions; Bottomline Auctions has no stock certificates; the debtor governs all or substantially all of the affairs of Bottomline Auctions; the debtor oversees all operations of Bottomline Auctions; the debtor enters into and personally performs all contracts of Bottomline Auctions; and the debtor acts as the corporate agent of Bottomline Auctions. The creditor analogizes this case to *Huntington Nat'l Bank v. Parton (In re Parton)*, 137 B.R. 902 (Bankr. S.D. Ohio 1991). In *Parton*, the debtor's wholly owned corporation arranged a lease for a motor vehicle between the creditor and a lessee. *Id.* at 903-04. The corporation failed to turn over the lease proceeds due the creditor. *Id.* at 904. The court held that piercing the corporate veil to hold the debtor personally liable was appropriate because: the debtor was the president, sole officer, and sole shareholder of the corporation; the debtor governed all or substantially all of the corporation's affairs; the corporation failed to issue any corporate stock; on more than one occasion, the debtor personally paid obligations of the corporation and the corporation paid the debtor's personal obligations; the debtor used the corporation's assets for personal use on

10

more than one occasion; and the debtor furnished all of the corporation's capital. *Id.* at 905-06.

The debtor has failed to show that there is no genuine dispute of material fact with regard to piercing the corporate veil. For example, in his motion for summary judgment, the debtor did not address whether he held "control over [Bottomline Auctions . . . so complete that [Bottomline Auctions] ha[d] no separate mind, will, or existence of its own. *Belvedere*, 67 Ohio St. 3d at 289. The debtor also did not address the other two *Belvedere* factors: whether the debtor's alleged control over Bottomline Auctions was exercised in such a manner as to commit fraud or an illegal act against the creditor, and whether injury or unjust loss resulted to the creditor from such control and wrong. *Id.* Instead of addressing the *Belvedere* factors directly, the debtor argues that he made no personal guarantee and that the parties' auctioneer-seller interaction did not create a fiduciary relationship. *See*, *e.g.*, *Aamodt v. Narcisi (In re Narcisi)*, 539 B.R. 385, 392 (Bankr. M.D. Fla. 2015) ("Bankruptcy courts have consistently held that an individual who serves as an auctioneer or consignee under a private contract does not act in a fiduciary capacity.") *aff'd,* 559 B.R. 233 (M.D. Fla. 2016), *aff'd,* 691 F. App'x 606 (11th Cir. 2017); *Freer v. Beetler (In re Beetler)*, 368 B.R. 720, 726 (Bankr. C.D. Ill. 2007) (no fiduciary relationship created under § 523(a)(4) from

11

consignment sale of tractor); *Poe v. Marshall (In re Marshall)*, 24 B.R. 105, 107 (Bankr. W.D. Mo. 1982) ("[T]he relationship of auctioneer-seller contained none of the attributes of an express or technical trust. There was no fiduciary relationship between plaintiff and defendant when the property was sold.").  While it is true that there have been no allegations of a personal guarantee and that there is not a fiduciary relationship between an auctioneer and seller, those are not requirements for piercing the corporate veil and holding the debtor personally liable for the debt of Bottomline Auctions.  Therefore, viewing the evidence in the light most favorable to the creditor, there is a genuine dispute of material fact as to whether piercing the corporate veil is warranted, and the debtor's motion for summary judgment is denied.

DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

Section 523 provides in pertinent part:

(a) A discharge under section 727 . . .  of this title does not discharge an individual debtor from any debt—
    . . . .
    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

12

To except a debt from discharge for false representation under § 523(a)(2)(A), a creditor must prove: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss. *Rembert*, 141 F.3d at 280-81. The creditor must demonstrate justifiable reliance under this section and need not pass the higher standard of reasonable reliance. *Field v. Mans*, 516 U.S. 59, 74-75 (1995).

A debt may also be excepted for discharge under § 523(a)(2)(A) for "actual fraud." In *Husky Intern. Electronics, Inc. v. Ritz*, 136 S. Ct. 1581, 1590 (2016), the Supreme Court held that the term "actual fraud" in § 523(a)(2)(A) includes fraudulent schemes even when those schemes do not involve a false representation, such as a fraudulent conveyance of property made to evade payment to creditors. For example, if the debtor used Bottomline Auctions in late 2019 and early 2020 to sell the equipment of entities such as We're Rolling Pretzels with no intention of turning over the proceeds, that would establish nondischargeability for "actual fraud" under § 523(a)(2)(A).

Section 523(a)(2)(A) expressly excludes all statements respecting a debtor's financial condition, whether written or oral, as a basis for nondischargeability.

13

*Prim Capital Corp. v. May (In re May)*, 368 B.R. 85, 2007 WL 2052185, at *5

(B.A.P. 6th Cir. 2007). Instead, statements respecting a debtor's financial

condition fall under § 523(a)(2)(B). A debt based upon an oral misrepresentation

of financial condition is not actionable and will be dischargeable. *Id*. The United

States Supreme Court has recently held that the term "statement . . . respecting the

debtor's . . . financial condition" should be interpreted very broadly, encompassing

even a statement about a single asset. *Lamar, Archer & Cofrin, LLP v. Appling*,

138 S.Ct. 1752, 1764 (2018). Justice Sotomayor explained that creditors still

benefit from the protection of § 523(a)(2)(B) so long as they insist that the

representations respecting the debtor's financial condition on which they rely in

extending money, property, services, or credit are made in writing. *Id.* Doing so

will likely redound to their benefit, as such writings can foster accuracy at the

outset of a transaction, reduce the incidence of fraud, and facilitate the more

predictable, fair, and efficient resolution of any subsequent dispute. *Id*.

In Count I of the second amended complaint, the creditor alleges that the

debt is nondischargeable under § 523(a)(2)(A). To make a determination of

nondischargeability for false representation under § 523(a)(2)(A), the creditor must

first show that the debtor obtained money through a material misrepresentation

14

that, at the time, the debtor knew was false or made with gross recklessness as to its truth. *Rembert*, 141 F.3d at 280-81.

According to emails and text messages submitted by the creditor, the debtor repeatedly told the creditor that the creditor would receive the auction proceeds in the near future (Docket No. 21, Exh. E).  In one email from February 21, 2020, the debtor told the creditor that the debtor would "get a check out to [the creditor] next week as early in the week as possible," but no check was ever sent (*Id.*).  In his motion for summary judgment, the creditor claims that instead of turning over the proceeds, the debtor "deposited the money into the bank account of Bottomline [Auctions] and personally enriched himself by paying himself added salary" (Docket No. 21).  However, other than mere assertions, the creditor did not submit any evidence that the debtor deposited the auction proceeds into the bank account of Bottomline Auctions and personally enriched himself.  In the text messages submitted by the creditor, the debtor stated that he "ha[d] no income at this time and ha[d not] for a few months now" (Docket No. 21 at Exh. F).  And although the debtor told the creditor multiple times that the debtor was working to get the creditor the auction proceeds soon, the debtor also explained to the creditor that Bottomline Auctions was having a hard time making sales and settling its debts due to the ongoing pandemic (*Id.*).

15

The creditor also claims that the debtor's false representations induced the creditor to entrust the debtor and Bottomline Auctions with the equipment to be sold at auction. However, the above statements regarding the auction proceeds occurred after the property had already been sold at auction, not before Bottomline Auctions was entrusted with the equipment. Additionally, the debtor did not solicit the creditor's business for this auction; the creditor was the one who approached the debtor about working with Bottomline Auctions (Docket No. 21, Exh. E). Viewing the evidence in the light most favorable to the debtor, a genuine dispute of material fact exists as to whether the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth. Because the creditor has failed to show that there is no genuine dispute of material fact as to the first element listed in *Rembert*, the Court need not address the other three elements. Accordingly, the creditor's motion for summary judgment as to Count I of the second amended complaint is denied.

DISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(4)

Section 523 of the Bankruptcy Code provides, in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual from any debt—
>
> . . . .
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. . . .

16

The Sixth Circuit has defined defalcation to encompass "not only embezzlement and misappropriation by a fiduciary, but also the failure to properly account for such funds." *Bd. of Trs. of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir. 2007) (citations omitted).

> A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: (1) a preexisting fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss.

*Id.* (citations omitted). "Fiduciary capacity," as applied in the defalcation provision of § 523, is construed more narrowly than the term is used in other contexts. The defalcation provision applies only to express or technical trusts, and "does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. . . . Accordingly, the defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *Id.* at 639-40 (citations omitted).

In addition, the Supreme Court recently addressed the state of mind requirement for defalcation under § 523(a)(4) of the Bankruptcy Code in *Bullock v. BankChampaign, N.A.*, 569 U.S. 267 (2013). In *Bullock*, the Supreme Court held that defalcation under § 523(a)(4) "includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the

17

same statutory phrase . . . one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." 569 U.S. at 269.

Embezzlement is defined as the "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Bucci*, 493 F.3d at 644 (quoting *Brady*, 101 F.3d at 1173).

The degree of fraud required for embezzlement is fraud in fact involving moral turpitude or intentional wrongdoing, for the purpose of permanently depriving another of his property. *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007). Since a debtor is unlikely to admit to acting with bad motives, fraudulent intent may be shown through circumstantial evidence. *Id.* at 116. The court may be aided in its subjective analysis by the presence of traditional indicia of fraud—"e.g., suspicious timing of events, insolvency, transfers to family members or other insiders." *Automated Handling v. Knapik (In re Knapik)*, 322 B.R. 311, 316 (Bankr. N.D. Ohio 2004). The court

18

should review the circumstances surrounding the case and determine "whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent." *Rembert v. AT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 282 (6th Cir. 1998). For embezzlement, a creditor may establish circumstances indicating a debtor's fraudulent intent, even if the debtor did not make a misrepresentation or misleading omission on which the creditor relied. *Fox*, 370 B.R. at 116. As a result, the creditors do not need to demonstrate justifiable reliance to prove "fraud in fact" under § 523(a)(4).

For purposes of § 523(a)(4), larceny is defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 n.3 (Bankr. N.D. Ohio 2003). The original taking of the property must have been unlawful. *See Schreibman v. Zanetti-Gierke (In re Zanetti-Gierke)*, 212 B.R. 375, 381 (Bankr. D. Kan. 1997).

In Count II of the second amended complaint, the creditor alleges that the debt is nondischargeable under § 523(a)(4). In his motion for summary judgment, the creditor argues that the debt is nondischargeable under § 523(a)(4) for embezzlement and larceny, but not defalcation. Therefore, the Court will not address any claim of defalcation under § 523(a)(4).

19

In his motion for summary judgment, the creditor argues that the debtor embezzled the auction proceeds from the sale of the equipment. To show embezzlement, the creditor must show "that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Bucci*, 493 F.3d at 644 (quoting *Brady*, 101 F.3d at 1173). The creditor entrusted the equipment to the debtor so that the equipment could be sold by Bottomline Auctions at an online auction. The creditor does not dispute that Bottomline did indeed sell the equipment at an online auction and that the purchasers picked up the auctioned equipment (*see* Docket No. 16 at ¶ 14). Therefore, the debtor did not appropriate the equipment "for a use other than that for which it was entrusted." *Bucci*, 493 F.3d at 644. The creditor argues that the debtor failed to turn over the auction proceeds and used the money "for his own corporate and personal benefit" (Docket No. 21 at pgs. 9-10). The creditor alleges that the debtor instead took the creditor's share of the proceeds and "transferred those funds to the operating account of Bottomline . . . *and paid himself added salary*" (*Id.* at pg. 10) (emphasis in original). The creditor provides no evidence of what the debtor did with the auction proceeds, and in fact, in the text messages submitted by the creditor the debtor stated that he "ha[d] no income at this time and ha[d not] for a few months now" (*Id.* at Exh. F).

20

The creditor argues that the facts in this case are similar to the facts in *Brady v. McAllister (In re Brady)*, in which the Sixth Circuit held that the debtor had embezzled sales proceeds from the creditor. *Brady*, 101 F.3d 1165. However, in *Brady*, the debtor "misrepresented the sale price of the [] property to [the] creditor and then secretly transferred the excess sales proceeds [from an account jointly held by the creditor and the debtor] to another corporation controlled by [the] debtor." *Brady*, 101 F.3d at 1172 (internal quotations omitted). Here, there is no evidence that the debtor transferred the funds to a personal account or a corporate account other than that of Bottomline Auctions. Aside from mere allegations, the creditor does not provide any evidence to show that the debtor appropriated the auction proceeds held by Bottomline Auctions. Therefore, there is a genuine dispute of material fact as to whether the debt for the auction proceeds is nondischargeable on grounds of embezzlement.

In his motion for summary judgment, the creditor argues that the debtor committed larceny when he retained funds that were supposed to be turned over to the creditor. Unlike embezzlement, for a debt to be nondischargeable on grounds of larceny, the original taking of the property must have been unlawful. *See Grim*, 293 B.R. at 166 n.3; *Zanetti-Gierke*, 212 B.R. at 381. There is no allegation that the debtor unlawfully took the equipment and sold it at auction. The creditor states

21

that the parties signed a contract to auction off the equipment (Docket No. 16 at ¶ 11), and makes no claim that the debtor unlawfully absconded with the equipment. As for the auction proceeds, there is also no allegation that the debtor unlawfully took the auction proceeds from the purchaser of the equipment. The debtor collected the proceeds from the purchaser pursuant to the agreement. The creditor's arguments relate to the debtor's failure to turn over the proceeds, not the manner in which the debtor obtained the proceeds from the purchaser. Therefore, there is a genuine dispute of material fact as to whether the debt for the auction proceeds is nondischargeable on grounds of larceny.

Furthermore, "mere conversion does not rise to the level of embezzlement or larceny under 523(a)(4)." *Contemporary Imports, Inc. v. Morrow (In re Morrow)*, 563 B.R. 272, 280 (Bankr. E.D. Tenn. 2017) (quoting *Tucker v. Cross (In re Cross)*, No. 08–50531, 2009 WL 981900 at *4 (Bankr. E.D. Tenn. Apr. 13, 2009)). To prove embezzlement or larceny, the creditor must show the debtor's specific intent to deprive the creditor of the auction proceeds (*Id.*) Here, the creditor has not introduced sufficient evidence to show that there is no genuine dispute of material fact as to the debtor's intent, and granting summary judgment under § 523(a)(4) is not appropriate. *See Buckeye Ret. Co., LLC, LTD. v. Swegan (In re Swegan)*, 383 B.R. 646, 655 (B.A.P. 6th Cir. 2008) ("Courts must be cautious in

22

determining issues that involve a person's state of mind when deciding a case at the summary judgment stage.").

CONCLUSION

For the reasons stated above, both motions for summary judgment are denied. The Court will contact the parties to set a new trial date and trial-related deadlines.

IT IS SO ORDERED.